**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DEVIN YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2458** |
| **MIKE TREGRE, in his individual capacity as Sheriff for St. John the Baptist Parish, ET AL** | **Section "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 14) and Plaintiff's Rule 56(d) Motion to Defer or Deny Summary Judgment and for Limited Discovery (Doc. 33). For the following reasons, Defendants' Motion is GRANTED and Plaintiffs Motion is DENIED.

## BACKGROUND

This matter arises out of a tragic tasing incident involving Plaintiff Devin Young, a largely non-verbal, intellectually disabled man who often communicates through pictures on his phone, and various St. John the Baptist Sheriff Deputies. Plaintiff brings suit under § 1983 against Mike Tregre in his individual capacity as the Sheriff for St. John the Baptist Parish and Stevie

Anthony, Devin Billiot, Benjamin Teetell, Ryan Adams, and the Estate of Shaquille Guerin in their individual capacities as Deputy Sheriffs, alleging violations of his 4th and 14th Amendment rights against unreasonable searches and seizures, unlawful detainment, and excessive force as well as bystander claims against Deputies Billiot, Teetell, Adams, and Guerin. Plaintiff also alleges *Monell* claims, *Canton* claims, and negligent supervision and retention claims.

On July 20, 2025, Deputy Anthony was sitting in his patrol vehicle when Plaintiff approached his window. While at his window, Plaintiff showed Deputy Anthony a picture of a five-year old girl. The parties disagree whether, at that point, Plaintiff told Deputy Anthony he "rubbed her on the booty."[1] Regardless, Deputy Anthony exited his vehicle and, after Plaintiff began walking away, demanded that he "stand right there for me."[2] Plaintiff ran instead. In response, Deputy Anthony drove after Plaintiff and further commanded him to stop, warning him that he would be tased if he continued to run. Plaintiff stopped and Deputy Anthony exited his vehicle to physically detain him. After roughly twenty seconds of struggle, however, Plaintiff broke free and ran off again, prompting Deputy Anthony to tase him as he fled. As a result, Plaintiff fell and Deputy Anthony approached and stood over him until Deputy Billiot arrived roughly a minute later. Over the next few minutes, the two detectives attempted to handcuff Plaintiff while he pinned his left arm under his body and refused to be subdued. Within a minute or two, Deputies Teetell, Adams, and Guerin arrived, and Plaintiff was successfully handcuffed.

[1] Doc. 31-2 ¶6; Doc. 22-10 at ¶5.

[2] Defs.' Ex. 2 at 11:38:03–11:38:44.

When the Deputies attempted to move Plaintiff into a police vehicle over the next few minutes, he went limp and had to be carried into the vehicle. Plaintiff was then transported to the hospital. During the entire ordeal, however, Plaintiff was not punched, kicked, slammed, or struck in any manner other than the initial taser application.

As a result of the incident, Plaintiff was booked for resisting an officer under Louisiana Revised Statutes § 14:108 and a search warrant was issued to search his phone for evidence of felony sexual battery under § 14:43.1. Plaintiff was never charged for sexual battery, and the resisting arrest charge was dropped.

On April 28, 2026, Defendants moved for summary judgment on all of Plaintiffs claims.[3] In Opposition, based on a private agreement between the parties, Plaintiff opposed dismissal of his excessive force, unlawful detainment, and bystander claims but did not oppose dismissal of the other claims.[4] In their Reply, Defendants "recognized the agreement and d[id] not disclaim it," but still moved this Court to rule on the non-immunity claims as unopposed.[5] In response, Plaintiff filed a Motion for Leave to File a Surreply,[6] which was granted on September 15, 2026,[7] and a Rule 56(d) Motion to Defer or Deny Summary Judgment and for Limited Discovery.[8]

---

[3] Doc. 14-1.

[4] Doc. 22. At the time of his Opposition, this agreement was not reflected in any Court Order. However, the Defendants recognized such an agreement in their Reply. Doc. 31 at 11.

[5] Doc. 31 at 11–12.

[6] Doc. 32.

[7] Doc. 35.

[8] Doc. 33.

The Rule 56(d) Motion seeks to defer, or deny without prejudice, consideration of the non-immunity claims in Defendants' Motion for Summary Judgment, including the official-capacity and *Monell* claims, and the negligent hiring, retention, and supervision claims. The Motion also seeks to permit limited discovery into Deputy Anthony's taser training before ruling on his immunity claim; and to allow limited identification discovery of Deputies Teetell, Adams, and Guerin regarding their involvement in placing Plaintiff in the police vehicle, dependent upon a finding that this Court cannot resolve their qualified immunity defense without such discovery. On September 23, 2026, the Court held an in-person status conference to address Plaintiff's Rule 56(d) Motion insofar as it concerned ruling on non-qualified immunity issues in Defendants' Motion for Summary Judgment.[9] The parties agreed that the Court's ruling on this Motion would only address qualified immunity.[10]

Accordingly, the Court's ruling on this Motion will only address Deputy Anthony's qualified immunity defense from Plaintiff's unlawful detainment and excessive force claims as well as Deputies Billiot, Teetell, Adams, and Guerin's qualified immunity defense from Plaintiff's excessive force and bystander liability claims. Plaintiff opposes.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if

[9] Doc. 39.
[10] *Id.*

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[12]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[13] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[14] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[15] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[16] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[11] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).

[12] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[13] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).

[14] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).

[15] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[16] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[17] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[18]

## II. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[19] Plaintiff has the burden of rebutting "the officers' qualified-immunity defense by establishing a genuine fact issue as to whether the officers' allegedly wrongful conduct violated clearly established law."[20]

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry."[21] The first prong asks, "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right."[22] The second prong asks, "whether the right in question was 'clearly established' at the time of the violation."[23] A law is "clearly established" when, "at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that *every* 'reasonable official would have understood that what he is doing violates that right.'"[24] The Supreme Court and Fifth Circuit do not require "a case directly on point" for a

[17] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[18] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[19] Griggs v. Brewer, 841 F.3d 308, 312 (5th Cir. 2016) (internal quotation omitted).

[20] Rockwell v. Brown, 664 F.3d 985, 991 (5th Cir. 2011).

[21] Tolan v. Cotton, 572 U.S. 650, 655 (2014).

[22] *Id.* at 655–656 (internal quotations and alterations omitted).

[23] *Id.* at 656 (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)).

[24] Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citing Anderson v. Creighton, 483 U.S., 640 (1987) (internal quotations and alterations omitted) (emphasis added).

court to find that a law is clearly established.[25] However, "existing precedent must have placed the statutory or constitutional question *beyond debate*."[26] Thus, Plaintiff "must point this court to a legislative directive or case precedent that is sufficiently clear such that *every* reasonable official would understand that what he is doing violates the law."[27]

In sum, once a public official has made a good-faith invocation of qualified immunity, the plaintiff has the burden:

> (1) to demonstrate a genuine dispute of material fact and to show "that a jury could return a verdict entitling the plaintiff to relief for a constitutional [or statutory] injury," and (2) to show that the allegedly violated right was clearly established by "identify[ing] a case—usually, a body of relevant case law—in which an officer acting under similar circumstances ... was held to have violated the Constitution."[28]

Courts have discretion to decide which prong to consider first.[29]

## LAW AND ANALYSIS

Defendant's Motion argues that Deputy Anthony is entitled to qualified immunity against Plaintiff's excessive force and unlawful detainment claims because he had reasonable suspicion to stop Plaintiff and used reasonable force when tasing him. Defendant also argues that the remaining Deputies are

---

[25] *Id.* (citing *Anderson*, 483 U.S. at 640 and Malley v. Briggs, 475 U.S. 335, 341 (1986)).

[26] *Id.* (emphasis added).

[27] Keller v. Fleming, 952 F.3d 216, 225 (5th Cir. 2020) (citing Reichle v. Howards, 566 U.S. 658, 664 (2012)) (emphasis added).

[28] Hankins v. Wheeler, No. CV 21-1129, 2023 WL 5751131, at *5 (E.D. La. Sept. 6, 2023), *rev'd in part, vacated in part*, 109 F.4th 839 (5th Cir. 2024) (quoting Joseph ex rel. Est. of Joseph v. Bartlett, 981 F.3d 319, 329 (5th Cir. 2019)).

[29] *Tolan*, 572 U.S. at 656 (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

entitled to qualified immunity against Plaintiff's excessive force and bystander claims because those Deputies used reasonable force when detaining Plaintiff and, therefore, had no duty to intervene. Plaintiff argues, however, that none of the Deputies are entitled to qualified immunity because they violated his clearly established rights to be free from excessive force and unlawful detainment.

The Court will begin by analyzing Deputy Anthony's qualified immunity as to Plaintiff's unlawful detainment claim. Then the Court will consider qualified immunity regarding Plaintiff's excessive force claims first against Deputy Anthony and then against the remaining Deputies. From there, the Court will consider Plaintiff's bystander liability claims against the Deputies before ruling on Plaintiff's Rule 56(d) Motion.[30]

## I. Unlawful Detainment Claim

Plaintiff alleges that Deputy Anthony unlawfully detained him without reasonable suspicion, thereby violating his Fourth Amendment rights. A person is "seized" under the Fourth Amendment "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[31] "Warrantless searches and seizures

---

[30] Plaintiff also brought an unreasonable search and seizure claim, alleging that the "Defendant Officers unlawfully seized [his] cell phone … then proceeded to search the cell phone without consent of Plaintiff or a search warrant." Doc. 1 at 5. However, this claim is clearly controverted by evidence in the record. Defendants submitted the search warrant authorizing the cell phone search. Doc. 14-6. This warrant was signed by Judge J. Sterling Snowdy of the 40th JDC pursuant to an affidavit signed by Detective Javonna Cardona. *Id.* Plaintiff did not respond to this evidence in his Opposition. Accordingly, the Court finds that Plaintiff's unreasonable search and seizure claim is meritless.

[31] Carroll v. Ellington, 800 F.3d 154, 170 (5th Cir. 2015) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)).

are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."[32] Relevant here, an exception to the warrant requirement is that "police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion that criminal activity is afoot." [33] Reasonable suspicion is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence."[34] However, the officer still must be able to "point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime."[35] "[R]easonable-suspicion determinations … must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."[36] "[A]n officer's mistake of fact may support probable cause or reasonable suspicion ... provided the officer's mistake of fact was objectively reasonable."[37]

Defendants argue that Deputy Anthony had reasonable suspicion to stop Plaintiff. Defendants support this argument by pointing out that Plaintiff approached Deputy Anthony's patrol vehicle and showed him a picture of a five-year-old-girl. [38] While it is genuinely disputed, in his sworn affidavit

---

[32] Hankins v. Wheeler, 109 F.4th 839, 845 (5th Cir. 2024) (quoting United States v. Hill, 752 F.3d 1029, 1033 (5th Cir. 2014)).

[33] *Id.* (quoting Goodson v. City of Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000)).

[34] Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citation omitted).

[35] *Hankins*, 109 F.4th at 845–846 (quoting *Hill*, 752 F.3d at 1033).

[36] U.S. v. Arvizu, 534 U.S. 266, 266 (2002).

[37] U.S. Karam, 496 F.3d 1157, 1164 (11th Cir. 2007) (citation omitted); United States v. Salazar, No. 16-CR-072, 2017 WL 1281131, at *7 (N.D. Tex. April 6, 2017) ("an officer's reasonable mistake of fact can still give rise to reasonable suspicion") (citing United States v. Cotton, 782 F.3d 392, 395–96 (8th Cir. 2015)).

[38] Doc. 32-3 at ¶1.

Deputy Anthony claims that he heard Plaintiff repeatedly say he "rubbed her on the booty."[39] Deputy Anthony's body cam footage then started recording audio a few seconds later and shows him stepping out of his vehicle, saying to Plaintiff, "what you got going on, brah? That's a five-year-old," to which Plaintiff responded, "yea."[40] After hearing this, Deputy Anthony told Plaintiff to "come stand right in front of me" and "stand right there for me." [41] Plaintiff ran instead. Defendants contend that, taken in totality, these circumstances gave Deputy Anthony reasonable suspicion to investigate whether Plaintiff had committed indecent behavior with juveniles under La. R.S. 14:81, which is a felony offense. Defendants bolsters this argument by pointing out that later in the video Deputy Anthony stated to Plaintiff, "you just showed me a picture of a five-year-old girl and said you touched her on the booty."[42] Deputy Anthony repeated this accusation later to his sergeant at the scene and in his report that afternoon.[43]

In Opposition, Plaintiff argues that the factual predicate for Detective Anthony's stop is genuinely disputed. Plaintiff contends that there is a genuine dispute over whether he said he "rubbed" the five-year-old-girl on the booty. Once this contested statement is removed, Plaintiff argues, all Deputy Anthony had to base his reasonable suspicion on was "that a man voluntarily

---

[39] Doc. 31-2 ¶6. Deputy Anthony's bodycam footage began recording audio after this alleged statement from Plaintiff. There is no recording where Plaintiff states he "rubbed her on the booty" and Plaintiff's sworn affidavit refutes ever saying such a thing. Doc. 22-10 at ¶5. However, Plaintiff does not deny showing Deput Anthony pictures of a child. *See id.*

[40] Defs.' Ex. 2 at 11:38:32–11:38:40.

[41] *Id.* at 11:38:37–11:38:45.

[42] *Id.* at 11:40:42–11:40:48.

[43] *Id.* at 11:45:30–11:45:45; Doc. 22-3 at 2.

approached a marked unit, show[ed] him a photograph of a child, answered 'yea' to 'that's a five year old?,' and left when told to stand still."[44] Plaintiff further says that Deputy Anthony's subsequent corroborating statements establish consistency, not truth, and no recording captures Plaintiff's statement. Plaintiff says these "facts do not establish particularized suspicion of any offense as a matter of law."[45] This Court disagrees.

The Court finds that, even without Plaintiff's disputed statement, there is no genuine issue whether Deputy Anthony had reasonable suspicion to investigate if Plaintiff committed criminal behavior with a minor.[46] Based on the evidence in the record, Plaintiff approached Deputy Anthony's vehicle and showed him a picture of a five-year-old child. When questioned about this and told to "stand right there," Plaintiff took off running. The Court acknowledges that flight alone cannot supply reasonable suspicion, but "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."[47] Moreover, the Court is mindful that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior."[48] Commonsense dictates that approaching a police vehicle, showing the officer a picture of a child unsolicited, and taking off running when questioned about it are enough "specific and particularized facts" that would lead a reasonable officer to suspect legal wrongdoing. Accordingly, the Court finds that Deputy

---

[44] Doc. 32-2 at 8.

[45] *Id.*

[46] Plaintiff acknowledges that "no precise offense need be identified" for reasonable suspicion of criminal behavior and "that flight counts for something." *Id.* at 7.

[47] *Wardlow*, 528 U.S. at 124.

[48] *Id.* at 125.

Anthony had reasonable suspicion to detain Plaintiff and is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights.[49]

## II. Excessive Force Claims

Next, the Court considers Plaintiff's claims of excessive force first against Deputy Anthony then against the remaining Deputies. In cases involving allegations of excessive force during an investigation or arrest, "the federal right at issue is the Fourth Amendment right against unreasonable seizures."[50] To prevail on a claim for excessive force under the Fourth Amendment, Plaintiff must show: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[51] "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on the facts and circumstances of each particular case."[52] Under the well-known *Graham* factors, relevant facts and circumstances to consider are: (1) the "severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," (3) and "whether he is actively resisting arrest or attempting to evade arrest by flight."[53] A court must review these considerations "from the perspective of a reasonable officer on the

---

[49] Because the Court has found that Deputy Anthony did not violate Plaintiff's rights, it does not, and need not, address whether Deputy Anthony's behavior violated clearly established law.

[50] *Tolan*, 572 U.S. at 656 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

[51] Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004) (citation omitted).

[52] Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

[53] *Graham*, 490 U.S. at 396.

scene, rather than with the 20/20 vision of hindsight."[54] Because injury is not at issue here, the Court will analyze whether any of the force used against Plaintiff was objectively unreasonable under the *Graham* factors.

**A. Deputy Anthony**

Plaintiff claims that Deputy Anthony used excessive force when he tased him. Specifically, Plaintiff argues that it was objectively unreasonable for Deputy Anthony to "fire four Taser cartridges in two and one-half seconds at the back of an unarmed, intellectually disabled man running away across an empty stadium parking lot, and then to let that cycle run on after he fell."[55] Plaintiff contends that the first two *Graham* factors "favor him decisively."[56] He says, at worst, the crime Deputy Anthony suspected him of was a misdemeanor and that he was unarmed while running away when tased.[57] Plaintiff also acknowledges, however, that the third *Graham* factor—evasion or active resistance—favors Defendants. But he argues that the tasing did not stop when Plaintiff stopped fleeing; instead, Deputy Anthony allowed the energization cycle to continue for roughly three seconds after he fell, making what may have been proportional force in one moment disproportional in the next. Plaintiff says there is a genuine issue as to whether "each successive

---

[54] Joseph on behalf of Est. of Joseph v. Bartlett, 981 F.3d 319, 332 (5th Cir. 2020) (quoting *Graham*, 490 U.S. at 396)).

[55] Doc. 22 at 1.

[56] *Id.* at 10.

[57] Plaintiff says that his alleged conduct was, at worst, the misdemeanor of sexual battery under Louisiana Revised Statues § 14:43.1.1 because that crime involves the touching of "the breast or buttocks" while felony sexual battery under § 14:43.1(A)—the charge on the search warrant issued for Plaintiff's phone—involves touching of the "anus or genitals." However, Plaintiff goes on to acknowledge that "reasonable suspicion does not require that an officer correctly identify the statute, and a jury could find Deputy Anthony suspected some sexual offense without pinning down its grade." *Id.* at 12.

trigger pull" and the "roughly three seconds of energization that continued after [Plaintiff's] fall" were "grossly disproportionate to any need."[58]

Defendants contend, however, that Deputy Anthony used force that was objectively reasonable considering the totality of the circumstances. Defendants point out that, regardless of whether it was a misdemeanor or felony, Deputy Anthony reasonably suspected Plaintiff of a sexual offense against a child. Defendants say the threat Deputy Anthony faced was that a suspect, who already fled twice, would "escape into a residential neighborhood before he could be identified and investigated."[59] Finally, Defendants point out that Plaintiff already concedes active resistance and that Deputy Anthony's force was "measured and proportional."[60] Taken together, Defendants say, the *Graham* factors do not support a finding of excessive force. This Court agrees.

The Court finds that there is no genuine issue of material fact as to whether Deputy Anthony's actions were objectively reasonable.[61] Aside from Plaintiff's statement to Deputy Anthony, the facts are largely undisputed. Plaintiff ran away from Deputy Anthony after twice being told to "stand right there for me."[62] Deputy Anthony drove after Plaintiff and again commanded him to stop, warning him not to run and that he would be tased if he did not

[58] *Id.* at 14–15.

[59] Doc. 31 at 7.

[60] *Id.*

[61] The Court notes that the first *Graham* factor—severity of the crime—does not depend on whether it is classified as a misdemeanor or a felony. *See* Anderson v. Estrada, 140 F.4th 634, 643 (5th Cir. 2025) (finding that the "crime at issue," a DUI, was a serious crime) (citations omitted). Here, the crime at issue was a sexual offense against a minor. The Court does not view the first *Graham* factor as inconclusive; rather, it finds this factor favors Defendants because it views such a crime to be serious, regardless of whether it was a felony or a misdemeanor.

[62] Defs.' Ex. 2 at 11:38:39–11:38:44.

listen.[63] When Deputy Anthony attempted to physically detain plaintiff, he again commanded him to "stop" and warned "don't get tased" while Plaintiff actively struggled to break free.[64] Once Plaintiff broke free, he fled.[65] Only then did Deputy Anthony tase him, resulting in 6.444 seconds of energization total—roughly two of which occurred while Plaintiff was on the ground.[66] The entirety of Deputy Anthony's taser application—three trigger pulls, each launching a probe to create a completed circuit, and a fourth trigger pull restarting the automatic five second energization cycle upon circuit completion—occurred while Plaintiff was upright and running.[67] In other words, Deputy Anthony did not initiate a single energization cycle after Plaintiff had fallen; rather, he simply let the automatic cycle run for two or three seconds as he closed the distance between he and Plaintiff.[68] Over the next several minutes, Deputy Anthony and the other Deputies commanded Plaintiff to stop resisting while he physically struggled against being placed in handcuffs.[69]

---

[63] *Id.* at 11:38:44–11:39:40.

[64] *Id.* at 11:39:40–11:40:05.

[65] *Id.* at 11:40:02–11:40:05.

[66] *Id.* at 11:40:09–11:40:11; Doc. 22-2.

[67] *Id.* at 11:40:05–11:40:11; Doc. 22-2. The Taser 10 fires a single probe per trigger pull and needs at least two probes to connect in order to form a completed circuit to deliver energy. Once a circuit is complete, an automatic five-second energization cycle runs unless the operator ends it early by moving the selector switch to the (SAFE) position. Doc. 22-11. Plaintiff admits that "every trigger pull occurred while [Plaintiff] was upright and running and that Deputy Anthony pulled no trigger and deployed no additional cartridge after [Plaintiff] fell." Doc. 32-3 at ¶11 (internal references omitted).

[68] Defs.' Ex. 2 at 11:40:08–11:40:11.

[69] Video footage shows Plaintiff pinning his left arm under his body and screaming several times to "call my momma." *Id.* at 11:40:08–11:43:36. Only after several minutes of struggle were the Deputies able to place Plaintiff in two sets of handcuffs. *Id.*

At the outset, Plaintiff concedes that he actively resisted and fled being detained by Deputy Anthony. Indeed, "[o]ur cases on police use of tasers have paid particular attention to whether officers faced active resistance when they resorted to a taser. Where, as here, the severity of crime and immediate safety threat are relatively inconclusive, a suspect's active resistance to arrest may justify this degree of force."[70] Here, Plaintiff was tased mid-flight only *after* he actively resisted being detained. Moreover, Deputy Anthony did not tase Plaintiff "as the *first method* to gain … compliance."[71] Rather, Deputy Anthony gave Plaintiff several commands over the course of several minutes, further warning him twice that he would be tased if he continued to actively resist.

---

[70] Cloud v. Stone, 993 F.3d 379, 384 (5th Cir. 2021) (finding that an officer did not use excessive force by tasing the plaintiff when he actively resisted arrest by refusing to listen to commands and turning around while being handcuffed). Indeed, the Fifth Circuit places significant emphasis on whether the Plaintiff was actively resisting or fleeing when analyzing whether force was objectively unreasonable. *See e.g.*, Peña v. City of Rio Grande City, 879 F.3d 613, 619–20 (5th Cir. 2018) (recognizing that flight is a key fact in the reasonableness of initial tasings); Trammell v. Fruge, 868 F.3d 332, 343 (5th Cir. 2017) (finding that it was "objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp"); *Joseph*, 981 F.3d at 342 (declaring that "[o]fficers engage in excessive force when they physically strike a suspect who is not resisting arrest"); Williams v. City of Cleveland, 736 F.3d 684, 688 (5th Cir. 2013) (noting that in previous taser cases rejecting qualified immunity—Ramirez v. Martinez, 716 F.3d 369, 380 (5th Cir. 2013); Newman v. Guedry, 703 F.3d 757, 764 (5th Cir. 2012); and Massey v. Wharton, 477 Fed.Appx. 256, 263 (5th Cir. 2012)—"the person tased was not attempting to flee")); *see also* Mumpuku v. Neal, No. 18-CV-00785, 2019 WL 6465315, at *7 (E.D. Tex. Dec. 12, 2019) (noting that the Fifth Circuit distinguishes single-taser application cases based on whether the plaintiff was "actively fleeing or actively resisting arrest" by comparing Bush v. Strain, 513 F.3d 492 (5th Cir. 2008); *Newman*, 703 F.3d 757; Cooper v. Brown, 844 F.3d 517 (5th Cir. 2016), with Zimmerman v. Cutler, 657 Fed.Appx. 340, 345 (5th Cir. 2016)); Henderson v. Harris County, 51 F.4th 125, 134–135 (5th Cir. 2022) (distinguishing *Newman*, 703 F.3d at 763 and Darden v. City of Fort Worth, 880 F.3d 722 (5th Cir. 2018) as "radically different" because, in part, "neither involved a suspect fleeing from police")).

[71] *Cloud*, 993 F.3d at 385 (emphasis in original) (citing Pratt v. Harris Cnty., 822 F.3d 174, 182 (5th Cir. 2016)).

Only after these attempts failed, did Deputy Anthony resort to tasing Plaintiff as he fled. The Court finds that, as is constitutionally required, Deputy Anthony used "measured and ascending actions that corresponded to [Plaintiff's] escalating verbal and physical resistance," making the force he used objectively reasonable.[72] Accordingly, Deputy Anthony's initial tasing was not excessive.

Further, Plaintiff argues that there is a genuine issue as to whether the roughly two seconds of post-fall tasing were objectively unreasonable. Plaintiff contends that whether a reasonable officer would have stopped the energization cycle by placing the weapon on SAFE immediately after Plaintiff fell is a question of material fact precluding summary judgment. Plaintiff contends there is a material question of fact as to whether his post-fall actions conveyed active resistance, "rather than the effect of the pulses," to a reasonable officer.[73] This Court disagrees.

While Plaintiff is correct that "an exercise of force that is reasonable at one moment can become unreasonable in the next *if the justification for the use of force has ceased*," Deputy Anthony's justification did not cease the instant

---

[72] *Anderson*, 140 F.4th at 643; *see also* Trabucco v. Rivera, 141 F.4th 720 (5th Cir. 2025) (finding it significant that an officer did not "abruptly resort to overwhelming physical force rather than continuing verbal negotiations"); Betts v. Brennan, 22 F.4th 577, 583–84 (5th Cir. 2022) (reasoning that force was not excessive because it was "measured and ascending," with the plaintiff only being tased once and not as a "first resort"); *Cloud*, 993 F.3d at 385 (finding that evidence of "measured and ascending" action is demonstrated by a taser not being used "as the *first method* to gain … compliance") (emphasis in original); *Joseph*, 981 F.3d at 332–33 (declaring that constitutional use of force must be "measured and ascending," corresponding to a suspect's "escalating verbal and physical resistance" and that a suspect engaged in "active resistance," as opposed to "passive resistance," may make force more justified) (quoting Poole v. City of Shreveport, 691 F.3d 624, 629 (5th Cir. 2012) and citing cases).

[73] Doc. 32-2 at 3.

Plaintiff fell to the ground.[74] Not only must sufficient time elapse "for [an] officer to perceive new information indicating the threat [has] passed" for reasonable force to become unreasonable—here, two seconds—but Plaintiff did not stop resisting after falling.[75] According to *Anderson v. Estrada*, "[r]epeated attempts to withdraw from an officer or declining to follow an officer's orders constitute active resistance."[76] The Court finds that two seconds was not enough time for Deputy Anthony to perceive a change in circumstances and, even if it were, Plaintiff continued to actively resist while on the ground by disobeying multiple commands and pinning his arms beneath his body. Thus, there is no genuine issue whether the two seconds of post-fall tasing were objectively unreasonable. As a result, Deputy Anthony is entitled to qualified immunity on Plaintiff's excessive force claim.[77]

The Court does not take lightly the tragedy of this situation. Plaintiff is a thirty-five-year-old intellectually disabled man who is largely non-verbal, often communicating through pictures on his phone. Throughout this upsetting encounter, Plaintiff pleaded with officers to "call my momma," likely demonstrating his lack of understanding of the situation. Indeed, this incident has left a lasting impact on Plaintiff as he no longer wishes to leave the home

[74] Mason v. Lafayette City-Par. Consol. Gov't, 806 F.3d 268, 277 (5th Cir. 2015) (citation omitted and emphasis added); *see Peña*, 879 F.3d at 620 ("once an arrestee stops resisting, the degree of force an officer can employ is reduced") (quoting *Cooper*, 844 F.3d at 524).

[75] Salazar v. Molina, 37 F.4th 278, 283 (5th Cir. 2022) (quotation omitted in citation).

[76] 140 F.4th at 646 (*Betts*, 22 F.4th at 584).

[77] Because the Court has concluded that Deputy Anthony's use of force was not excessive, it does not, and need not, address whether his actions violated clearly established law.

by himself and becomes upset when he sees a marked police vehicle.[78] While the Court is sympathetic to the tragedy of these events, it is mindful of its obligation to apply the law as it is, which requires that it analyze Deputy Anthony's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[79] Though the details of Plaintiff's disabilities are clear today, they were not clear at the time of the tasing incident. All Deputy Anthony knew before he tased Plaintiff was that a man approached his vehicle, showed him a picture of a child unsolicited, said, from what he understood, that he "rubbed her on the booty," disobeyed multiple commands to stand still, and fled twice. Therefore, the Court dismisses Plaintiff's claims against Deputy Anthony.

**B. Remaining Deputies**

For the first time in his Surreply, Plaintiff argues that Deputies Billiot, Teetell, Adams, and Guerin used excessive force. Plaintiff points out that Deputy Billiot restrained him and handed Deputy Anthony the baton used as leverage to free Plaintiff's arm and eventually handcuffed him. Plaintiff further points out that Deputies Teetell, Adams, and Guerin assisted completion of the handcuffing and "lift[ed] him by the arms while he was cuffed and bent forward."[80] Plaintiff argues that while "ordinary handcuffing after flight is [not] categorically unlawful … the recorded restraint and lifting must be measured against his contemporaneous conduct, including the competing

---

[78] Doc. 22-8 at ¶10.

[79] *Joseph*, 981 F.3d at 332 (quoting *Graham*, 490 U.S. at 396)). The Court also notes that "the legal significance of an officer's awareness of a suspect's mental health is murky." *ibid*. at 334.

[80] Doc. 32-2 at 9.

inference that his movements reflected pain and confusion rather than active resistance."[81] The Court is not entirely sure what exactly Plaintiff's point is, but has no trouble finding that, based on evidence in the record, none of the Deputies used excessive force even if Plaintiff's actions are characterized as passive resistance.

While the Court is aware that, in the usual case, each officer's actions should be analyzed independently to determine if he is entitled to qualified immunity, the Court finds that doing so here is unnecessary.[82] Plaintiff admits that he "was not struck, punched, kicked, or slammed, and that the force used included hands-on control, the baton lever, linked handcuffs, and lifting and carrying."[83] He further admits that he "went limp, did not stand, and was carried" into the police vehicle.[84] Whether Plaintiff's actions stemmed from confusion or pain is immaterial. An officer's use of force is an objective inquiry and "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion."[85] Moreover, the Fifth Circuit has already stated that it "it is reasonable for an officer to attempt to grab a noncompliant suspect's arm in an attempt to handcuff the suspect."[86]

---

[81] *Id.*

[82] *Newman*, 703 F.3d at 762 ("We examine each officer's actions independently to determine whether he is entitled to qualified immunity.") (citing Meadours v. Ermel, 483 F.3d 417, 421–22 (5th Cir.2007)).

[83] Doc. 32-3 at ¶15.

[84] *Id.* at ¶14.

[85] *Graham*, 490 U.S. at 396–97 (the "'reasonableness' inquiry in an excessive force case is an objective one," allowing "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation") (citations omitted).

[86] *Trammell*, 868 F.3d at 343 n.9 (holding that qualified immunity was appropriate against the plaintiff's claim against an Officer who's "only involvement in the altercation was apparently an attempt to grab [the plaintiff's] arm").

Accordingly, the Court finds that there is no genuine issue as to whether any of the other Deputies used force that was objectively unreasonable. Thus, they are entitled to qualified immunity on Plaintiff's excessive force claims.

## III. Bystander Liability Claims

Finally, Plaintiff argues that Deputies Billiot, Teetell, Adams, and Guerin are liable as bystanders for failing to intervene while his constitutional rights were violated. "An officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act."[87] A claim for bystander liability requires "more than mere presence in the vicinity of the violation."[88] The officer must have "acquiesced in the alleged constitutional violation."[89]

Because the Court has already found that there was no violation of Plaintiff's constitutional rights, the bystander claims against the other Deputies fail as a matter of law.[90] Accordingly, they are dismissed.

## IV. Plaintiff's Rule 56(d) Motion

Plaintiff has also moved this Court under Federal Rule of Civil Procedure 56(d) to defer or deny ruling on his non-immunity claims. In addition, he requested additional discovery regarding Deputy Anthony's training on the Taser 10's selector switch as well as limited identification discovery regarding

---

[87] *Joseph*, 981 F.3d at 343 (citing Whitley v. Hanna, 726 F.3d 631, 646 (5th Cir. 2013)).

[88] *Id.* (quoting Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995)) (internal quotations omitted).

[89] *Id.* (citing *Whitley*, 726 F.3d at 647) (internal quotations omitted).

[90] *See Anderson*, 140 F.4th at 648 (ruling that bystander liability could not apply after finding no constitutional violation).

Deputies Teetell, Adams, and Guerin's role in handcuffing and moving Plaintiff into the police vehicle, dependent upon a finding that the Court cannot resolve a Deputies qualified immunity without first clarifying their role in the arrest.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may defer consideration of the motion or allow the nonmovant additional time for discovery.[91] "To justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery; and (2) how the additional discovery will likely create a genuine issue of material fact."[92] The Rule 56(d) movant "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[93]

Here, the parties agreed at an in-person status conference that the Court's ruling on this Motion would only address qualified immunity.[94] Accordingly, insofar as the Motion seeks denial or deferral of non-qualified immunity issues, it is denied as moot. In addition, the Court finds that Deputy Anthony's training on the Taser 10, as well as the reason he did not put the weapon on safe after Plaintiff fell, is not material to whether he is entitled to qualified immunity. The Court has already concluded that two seconds was not

---

[91] Weaver v. Harris, 486 F. App'x 503, 505 (5th Cir. 2012).
[92] *Id.*
[93] McKay v. Novartis Pharm. Corp., 751 F.3d 694, 700 (5th Cir. 2014).
[94] Doc. 39.

enough time for Deputy Anthony to perceive a change in circumstances, and even if it were, Plaintiff continued to resist while on the ground. Thus, insofar as the Motion seeks discovery regarding Deputy Anthony, it is denied. Finally, because the Court has already found that none of Deputies Teetell, Adams, and Guerin used excessive force, the Motion is denied insofar as it seeks discovery regarding those Deputies' role in this matter.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's excessive force, unreasonable search and seizure, unlawful detainment, and bystander claims are **DISMISSED WITH PREJUDICE**. In addition, Plaintiff's Rule 56(d) Motion is **DENIED.**

New Orleans, Louisiana this 13th day of October, 2026.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**